UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CRYSTAL HILDEBRANDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-210 CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | | |

**OPINION AND ORDER**

On May 7, 2009, Plaintiff Crystal Hildebrandt ("Hildebrandt"), filed her complaint in this Court. On September 25, 2009, Hildebrandt filed an opening brief, and she asks this Court to enter judgment in her favor or remand this matter to the Commissioner. On January 11, 2010, Defendant, Social Security Administration ("SSA"), filed a response. On January 21, 2010, Hildebrandt filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, motions, the administrative record, and the briefs of the parties.

**I. PROCEDURE**

On March 10, 2005, Hildebrandt filed an application for supplemental security income. On March 18, 2005, Hildebrandt filed an application for child disability insurance benefits. In both applications, Hildebrandt alleged disability beginning November 6, 2003. Hildebrandt claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614. Hildebrandt's application was initially denied and again upon reconsideration.

On May 15, 2008, Hildebrandt appeared at a hearing before an Administrative Law Judge ("ALJ). On June 12, 2008, the ALJ found Hildebrandt was not disabled because she could

perform a significant number of jobs despite the limitations caused by her impairments. In addition, the ALJ found Hildebrandt had engaged in substantial gainful activity since the alleged onset of disability on November 6, 2003. Further, the ALJ found Hildebrandt to have severe impairments of asthma, attention deficit hyperactivity disorder, mood disorder, bipolar disorder, borderline intellectual functioning, learning disorder, and a history of alcohol and cannabis abuse in remission. However, the ALJ found Hildebrandt did not have any impairments that met the listed impairments in 20 C.F.R. app. 1, subpart P. § 404.

In the instant case, the ALJ found that Hildebrandt had a residual functional capacity sufficient to perform a restricted range of light work. In particular, the ALJ specified that Hildebrandt: (1) would need to avoid concentrated exposure to temperature extremes, wetness, humidity, and pulmonary irritants, (2) could perform simple, routine, and repetitive tasks, (3) could not meet fast paced or strict production requirements, (4) would be limited to jobs with few, if any, changes in the work setting, (5) would be limited to jobs where reading, spelling, and mathematics are not essential skills, (6) could work where only occasional and brief interactions with others are required, and (7) would work best in small groups of people.

Based on this finding, the ALJ determined Hildebrandt could perform her past relevant work as an unskilled assembler of rubber goods. Similarly, the ALJ found Hildebrandt could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Hildebrandt was not disabled. Accordingly, the ALJ denied Hildebrandt's applications for DIB and SSI.

On July 7, 2008, Hildebrandt appealed the ALJ's decision to the Appeal's Council. On February 2, 2009, the Appeals Council denied review of the ALJ's decision; and, as a result, the

ALJ's decision became the Commissioner's final decision.  See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).  Consequently, on May 7, 2009, Hildebrandt filed a complaint in this Court seeking review of the ALJ's decision.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.    ANALYSIS**

    A.    Facts

Hildebrandt was 18 at the time of the alleged onset of disability and 22 at the time of the ALJ's decision.  Hildebrandt has a high school education, one year of college studies; and her past relevant work includes work as an assembler of rubber goods.  Specifically, Hildebrandt worked from August 2007 through November 2007 assembling rubber wiper blades.  Hildebrandt alleged that she suffered primarily from mental limitations.  For example, Hildebrandt alleged she suffered from a mental handicap, low intellectual capacity ("IQ"), ADHD, depression, bipolar disorder, and asthma.  Hildebrandt alleged a disability onset date of November 6, 2003.

Hildebrandt testified that she suffered from ADHD which prevented her from staying focused.  Further, Hildebrandt stated that the ADHD prevented her from maintaining normal conversations and performing simple routine tasks.  Regarding her depression, Hildebrandt stated that she often had emotional fits where she became unreasonable, screamed, and verbally attacked those around her.  Hildebrandt reported she was pregnant at the time of the hearing.  Additionally, Hildebrandt testified that as a result of the pregnancy she was unable to take her prescribed medications.  Hildebrandt reported that prior to her pregnancy she had been prescribed Wellbutrin, Adderall, and Seroquel.  In addition, Hildebrandt testified that she had

difficulties sleeping and required prescription medication to sleep properly. Finally, Hildebrandt testified that she went grocery shopping weekly, washed dishes daily, and spent the remainder of her time on the computer.

On April 21, 2005, Hildebrandt consulted with Dr. Steve Herman regarding a psychological evaluation. Dr. Herman diagnosed Hildebrandt as suffering from attention deficit hyperactive disorder ("ADHD"), major depressive disorder, and borderline intellectual functioning. Dr. Herman observed deficits in the areas of attention, concentration, and social comprehension. Additionally, Dr. Herman noted that Hildebrandt had an overall IQ of approximately 77. Moreover, Dr. Herman reported that Hildebrandt's limitations could be a problem in certain occupations. Upon examination, Hildebrandt's GAF score was 65.

On May 14, 2005, Hildebrandt met with Dr. David Bose for a consultative examination. Dr. Bose diagnosed Hildebrandt as having ADHD, mental problems, and asthma. Further, Dr. Bose recommended that Hildebrandt have a full neuropsychological evaluation. Hildebrandt was referred to Dr. Kimberly A. Green for the examination.

On May 25, 2005, Hildebrandt consulted with Dr. Green for a psychological examination. Dr. Green diagnosed Hildebrandt as suffering from ADHD and borderline intellectual functioning. Additionally, Dr. Green observed that Hildebrandt had some difficulties following directions, processing questions, and comprehending requests. Upon examination, Hildebrandt had a GAF score of 51.

On July 6, 2006, Hildebrandt consulted with Dr. Lawrence Henderson for psychiatric treatment. Dr. Henderson diagnosed Hildebrandt as suffering from ADHD, bipolar disorder, and cannabis and alcohol abuse in remission. Accordingly, Dr. Henderson prescribed Adderall and

Wellbutrin.

On July 24, 2007, Hildebrandt sought treatment at the Madison Center and Hospital. During treatment at the Madison Center, Hildebrandt was diagnosed as having ADHD, bipolar disorder, and depressive disorder. Upon examination, Hildebrandt's GAF score was 52.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

C. Hildebrandt's Motion for Summary Judgment or Remand

To be entitled to child's insurance benefits ("CIB") a claimant has to satisfy both the CIB requirements as well as the disability requirements of the Social Security Act. To satisfy the CIB requirements, Hildebrandt must: (1) establish that she had filed an application for child's insurance benefits, (2) that she was unmarried at the time of application and either had not reached the age of 18 or was a full time elementary or secondary school student who had not reached the age of 19 or is under a disability, or is under a disability (as defined in section 423(d)

which began before he attained the age of 22, and (3) was dependant upon an individual who was entitled to disability insurance benefits at the time of their death. See 42 U.S.C. § 402(d)(1). Additionally, Hildebrandt must prove that she was continuously disabled under the act from the alleged onset of disability through the date which she applied for CIB. See Reading v. Mathews, 542 F.2d 993, 997 (7th Cir. 1976). The requirements for establishing disability for the purpose of obtaining child's insurance benefits are identical to those for establishing disability for purposes of supplemental security income. See 42 U.S.C. § 402(d)(1)(b).

To be entitled to benefits under the Social Security Act, Hildebrandt must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether the ALJ's determination that Hildebrant's past work experience constituted substantial gainful activity is legal error, (2) whether the ALJ's determination of residual functional capacity was supported by substantial evidence, and (3) whether the ALJ made erroneous findings at steps four and five. This Court will address each of Hildebrandt's arguments in turn.

    1.    The ALJ's determination that Hildebrant's work history constituted substantial gainful activity is not legal error.

Hildebrandt asserts the ALJ committed legal error by finding that the assembly position constituted substantial gainful activity. Specifically, Hildebrandt argues that she testified to being fired after four months due to her mental impairments; and that, therefore, under applicable Social Security Regulations, the assembly job constitutes an unsuccessful work attempt and not substantial gainful activity. In part, Hildebrandt claims that she was fired because of her disability and not her performance. Further, Hildebrandt asserts that since the ALJ did not make a specific conclusion as to the reason behind her dismissal, remand is

7

necessary.

An ALJ's failure to apply the correct legal standard presents a question of law. See Old Ben Coal Co. v. Dir., OWCP, 292 F3d 533, 538 (7th Cir. 2002). While a reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, an ALJ's legal conclusions are reviewed *de novo*. See Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). When a claimant has been gainfully employed after the onset of alleged disability, the claimant is not disabled. See Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006). However, gainful employment does not include unsuccessful work attempts. See Stevenson v. Chater, 105 F.3d 1151, 1155 (7th Cir. 1997). The Social Security Administration will consider work that lasted longer than three months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months *because of claimant's impairment*. See 20 C.F.R § 404.1574(c)(4)(emphasis added). Additionally, the Social Security Administration will consider work that last longer than three months to be an unsuccessful work attempt if it ended due to the removal of special conditions which took into account the claimant's impairment and permitted claimant to work and: (1) claimant was frequently absent from work due to impairment, (2) claimant's work was unsatisfactory due to impairment, (3) claimant worked during a period of temporary remission of the impairment, or (4) claimant worked under special conditions that were essential to claimant's performance and these conditions were removed. See 20 C.F.R § 404.1574(c)(4).

In the instant case, the ALJ concluded that Hildebrandt's work activity from August 14, 2007, through November 2007 was consistent with substantial gainful activity. In making this finding, the ALJ noted that Hildebrandt testified to having been terminated from the assembly

8

job for failure to work up to their required speed. Tr.27. However, the ALJ also observed that Hildebrandt later testified that she had simply been laid off. Id. Additionally, the ALJ noted that the cessation of Hildebrandt's assembly job was commensurate with the onset of her pregnancy. Id. Accordingly, the ALJ concluded that, while there appeared to be some question as to why the assembly job ended, the position constituted substantial gainful activity.

This Court finds the ALJ's conclusion that Hildebrandt's work attempt constituted substantial gainful activity to be sufficiently articulated and not legal error. The Social Security Regulations state that a work attempt which lasted between three and six months will only be considered an unsuccessful work attempt if it ended because of the claimant's impairment or due to the removal of special conditions that took into account the claimant's impairment. 20 C.F.R. § 404.1574(c)(4). In the instant case, the ALJ observed that Hildebrandt's testimony as to the cause of her dismissal was ambiguous and did not establish that she was fired due to her disability. Tr. 27. In addition, the ALJ noted that Hildebrandt's dismissal coincided with her pregnancy. Accordingly, the ALJ concluded that Hidlebrandt's assembly position constituted substantial gainful activity. Such discussion of the evidence and reasoning behind the ALJ's conclusion suffices to create the requisite evidentiary support and logical basis that is necessary for this Court to uphold the determination. Haynes, 416 F.3d at 626. As a result, because the ALJ relied on substantial evidence and sufficiently articulated her reasoning, this Court concludes the ALJ's gainful activity determination is not legal error and is supported by substantial evidence.

While an ALJ has a duty to make a complete record, that duty can only reasonably

require so much. Sheck v. Barnhart, 357 F.3d 607, 702 (7th Cir. 2004). The difficulty is that no record is entirely complete, one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking complete record literally would become a formula for paralysis. See Kendrick v. Shalala, 998 F.2d 455, 456 (7th Cir. 1993). An ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." See Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001). A claimant must provide evidence showing how their impairment affects their functioning during the time claimant alleges disability, and any other information that is needed to decide the disability claim. See 20 C.F.R. 404.1512(c).

In addition, Hildebrandt argues that the ALJ failed to develop the record to determine the cause behind her dismissal from the assembly position and that this failure constitutes reversible error. Further, Hildebrandt argues the ALJ failed to consider an employer questionnaire and that this failure constitutes a lack of a fully developed record. The ALJ, as noted above, observed that Hildebrandt testified to both being fired for not meeting production quotas and to simply being laid off. Tr.23. Additionally, the ALJ reported that the date of Hildebrant's dismissal coincided with her pregnancy and concluded that the assembly position constituted substantial gainful activity.

This Court concludes the ALJ sufficiently developed the evidentiary record and based her decision on substantial evidence. The ALJ took reasonable steps to sufficiently develop the evidentiary record and Hildebrandt cannot fault the ALJ for her own failure to support her claim for disability. The ALJ's review of the evidence is sufficient to create the requisite evidentiary support and logical basis that is necessary for this Court to uphold the determination. Haynes,

10

416 F.3d at 626.

>        2.    The ALJ's residual functional capacity determination is supported by substantial evidence.

Next, Hildebrandt argues that the ALJ's residual functional capacity finding is not based on substantial evidence. Specifically, Hildebrandt argues that the ALJ relied solely upon favorable evidence and ignored unfavorable lines of evidence.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). An ALJ need not provide a written evaluation of every piece of testimony and evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). An ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ, in determining residual functional capacity, first examined Hildebrandt's testimony and daily activities. The ALJ noted Hildebrandt had completed high school in addition to finishing one year of college. The ALJ concluded that while Hildebrandt's medically

11

determinable impairments could produce the alleged symptoms, Hildebrandt's statements as to intensity and persistence of these symptoms were not credible. Further, the ALJ considered the statements and findings of Hildebrandt's examining physicians and explained the weight given to each medical source. After examining the relevant medical evidence, the ALJ determined the opinions of state agency examining physicians were entitled to some weight. Similarly, the ALJ afforded weight to the opinions of state agency examining psychologists due to their consistency with the medical record. However, the ALJ gave no weight to the opinion of Hildebrandt's social worker, concluding that the social worker is not an acceptable source of medical evidence. Finally, the ALJ concluded that Hildebrandt suffered from mental impairments which restrict the amount of work that she can perform but found that she would still have the residual functional capacity to perform a restricted range of light work. Having quantified Hildebrandt's limitations, the ALJ then incorporated these limitations into a lengthy residual functional capacity finding.

This Court concludes that the residual functional capacity analysis performed by the ALJ is sufficient to create the logical bridge from the evidence to her conclusion. Haynes, 416 F.3d at 626. In the instant case, the ALJ thoroughly examined Hildebrandt's testimony in addition to the record medical evidence and concluded that Hildebrandt's statements were not entirely consistent the medical evidence. Further, the ALJ examined and explained the various inconsistencies in Hildebrandt's testimony. Such analysis of the evidence provides sufficient and adequate discussion of the issues. Lopez, 336 F.3d at 539. Similarly, the ALJ examined the various opinions of examining physicians and psychologists and explained the weight given to each source. Again, such analysis of the evidence provides sufficient discussion and articulation

of the issues. Id. Indeed, the ALJ's robust analysis of the record evidence, pursuant to his residual functional capacity finding, constituted seven single spaced pages of his opinion. Accordingly, this Court finds that the ALJ's residual functional is sufficiently articulated and supported by substantial evidence.

        3.      <u>The ALJ's findings at step four and five were proper and are supported by substantial evidence</u>.

Hildebrandt subsequently argues that the ALJ made erroneous conclusions at steps four and five. At step four, Hildebrandt again argues the assembly position did not constitute substantial gainful activity. Accordingly, Hildebrandt argues it was error for the ALJ to conclude Hildebrandt could return to perform this work as gainful employment because the work was never performed at gainful employment levels.

At step four of the ALJ's analysis, the ALJ must determine if the claimant still has a residual functional capacity that permits her to perform her past relevant work. See 20 C.F.R. § 404.1520(e). In determining if the claimant can perform her past relevant work, the ALJ must compare the demands of the work with her present capacities. See <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir. 1984). Step four of the disability analysis requires a finding of not disabled if the individual is capable of performing work he has done in the past. See 20 C.F.R. § 404.1520(e).

This Court interprets Hildebrandt's argument as further challenge to the ALJ's finding that Hildebrandt had engaged in substantial gainful activity after the alleged onset of her disability. This Court has already concluded the ALJ's finding of substantial gainful activity at step one is supported by substantial evidence, sufficiently articulated, and not legal error.

13

Additionally, this Court has already concluded that the ALJ's residual functional capacity finding was proper and supported by substantial evidence. Thus, because the assembly position constituted past substantial gainful activity and was within the ALJ's residual functional capacity determination, the ALJ properly concluded that Hildebrandt could return to her past relevant work. Accordingly, this Court finds the ALJ's conclusion at step four is proper and supported by substantial evidence.

Finally, Hildebrandt argues that the ALJ's finding at step five was erroneous and not supported by substantial evidence. At step five, Hildebrandt argues that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to obtain a reasonable explanation for the apparent conflict. Specifically, Hildebrandt argues the mail clerk and housekeeper positions given by the vocational expert require strict production requirements and personal interactions beyond the limitations in the residual functional capacity determination.

At step five, if the claimant cannot perform her past relevant work, then the ALJ must determine if she can perform other work in society. See 20 C.F.R. § 404.1520(g). If the claimant can perform a significant number of jobs available in the economy then the claimant is not disabled. Id. When a vocational expert provides testimony about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that evidence and the information provided in the DOT. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). If there is an apparent conflict between the vocational expert's testimony and the information provided in the DOT, the ALJ must obtain a reasonable explanation. Overman v. Astrue, 546 F.3d 456, 462 (7th Cir. 2008). Where claimant's counsel

does not identify a conflict at the hearing, claimant must show that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. Id.

At the hearing on May 15, 2008, the vocational expert ("VE") testified regarding the possibility of someone with Hildebrandt's residual functional capacity working in the national economy. The VE testified that someone with Hildebrandt's education, work history, and restricted residual functional capacity could perform a number of jobs in the national economy. Specifically, the VE testified that Hildebrandt would be able to perform the jobs of housekeeper, packing line worker, order filler, hand packager, and mail clerk. The ALJ subsequently concluded Hildebrandt was capable of performing work that existed in significant numbers in the economy and found Hildebrandt to be not disabled.

This Court finds the ALJ's reliance upon the vocational expert's testimony to be reasonable. Similarly, this Court finds the vocational expert's testimony did not apparently conflict with the DOT definitions. Prochaska, 454 F.3d at 735. The ALJ's residual functional capacity finding limits Hildebrandt to occasional and brief interactions with others and states Hildebrandt would work best only with small groups. However, this Court notes that such a restriction does not entirely preclude Hildebrandt from interactions with people. The DOT definition for housekeeper states only that the housekeeper may "render personal assistance to patrons." DOT 323.687-014. Such a requirement of some personal interaction is not inconsistent with either the vocational expert's testimony or the residual functional capacity finding. Further, the ALJ's residual functional capacity determination limited Hildebrandt to simple, routine, and repetitive tasks with no fast pace or strict production requirements. The DOT definition for mail clerk does not specifically require strict production requirements, nor does it require a fast pace.

DOT 209.687-026.  Rather, the DOT definition requires simple and repetitive tasks dealing with sorting and distributing mail.  As such, the vocational expert's testimony was not inconsistent with the DOT.  Therefore, this Court concludes that the vocational expert's testimony did not present an apparent conflict with the DOT.  Accordingly, this Court finds the ALJ was not required to explore the issue further.  Prochaska, 454 F.3d at 735.

### III. Conclusion

For the aforementioned reasons, this Court concludes the ALJ's finding of substantial gainful activity at step one was supported by substantial evidence and not legal error.  Similarly, the ALJ's determination of Hildebrandt's residual functional capacity is supported by substantial evidence and sufficiently articulated.  Finally, this Court concludes that the ALJ's conclusions at steps four and five of the analysis were not in error.  Therefore, Hildebrandt's motion for reverse or remand is **DENIED**.  [Doc. No. 17].  Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED**.

Dated this 19th Day of February, 2010.

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge